UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CAROLE CHAIKEN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 16-mc-80155-DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION RE AMENDED PETITION TO QUASH IRS SUMMONS AND MOTION FOR SUMMARY DENIAL**<br><br>Re: Dkt. Nos. 10, 22 |

The Estate of Carole Chaiken moves to quash three Internal Revenue Service ("IRS") summonses issued to medical providers requesting the late Carole Chaiken's medical records from January 1, 2010 to July 1, 2013. [Docket No. 10.] The government opposes the motion and moves for summary denial of the amended petition to quash. [Docket No. 22.]

The court conducted a hearing on October 27, 2016. Following the hearing, the parties submitted supplemental briefing. [Docket Nos. 32 (Gov't's Suppl. Br.), 39 (Estate's Suppl. Br.).] At least one party declined to consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, the court issues this report and recommendation[1], and requests that the matter be reassigned to Chief Judge Phyllis J. Hamilton, who was the district judge on duty on the date the petition was filed. *See* General Order No. 44(E)(3). For the following reasons, the court recommends that the amended petition to quash be granted in part and denied in part, and the motion for summary denial be granted in part and denied in part.

---

[1] *See United States v. Bell*, 57 F. Supp. 2d 898, 900-903 (N.D. Cal. 1999) (discussing limits on magistrate judge's authority to make final determination regarding IRS administrative enforcement proceedings).

I.     BACKGROUND

Carole Chaiken and Donald Chaiken, a married couple with children, formed the Chaiken Family Trust and served as its trustees. D. Chaiken Decl., May 6, 2016 ("Chaiken Decl. I"), ¶ 2; Smith Decl., August 18, 2016, ¶ 4; D. Chaiken Decl., Sept. 8, 2016 ("Chaiken Decl. II), ¶ 10. Carole Chaiken died on July 1, 2013. Chaiken Decl. I ¶ 2. Donald Chaiken is the executor of the Estate of Carole Chaiken (the "Estate"). Chaiken Decl. I ¶¶ 1-2.

The summonses at issue in this petition stem from an IRS investigation of the Estate's 2012 Form 709, United States Gift (and Generating-Skipping Transfer) Tax Return ("Gift Tax Return"). Smith Decl. ¶ 2. The Gift Tax Return reports that in 2012, Ms. Chaiken made gifts of "promissory note forgiveness" to trusts in her children's names with a combined value of more than $1,000,000. Smith Decl. ¶ 4. The IRS contends that the promissory notes are actually credit agreements. According to the IRS, the credit agreements contemplated that the Chaiken Family Trust would lend millions of dollars to the children's trusts in periodic advances, and the children's trusts would repay the advances over time, with interest. *Id.* Between July 2012 and the end of December 2012, the Chaiken Family Trust made advances of at least $12,800,000 to the children's trusts. *Id.* On the last day of 2012, the Chaiken Family Trust "forgave" $8,400,000 of the debt created by those advances. *Id.* The Gift Tax Return valued the forgiveness of $8,400,000 of debt at just over $1,000,000 for tax purposes.[2] *Id.*

The Estate takes the position that the transfers were loans which the parties entered into through a bona fide debtor-creditor relationship. Smith Decl. ¶ 5; Chaiken Decl. II ¶ 10. The IRS

---

[2] Somewhat confusingly, the IRS does not draw a distinction between the Estate and the Chaiken Family Trust and appears to refer to the two entities interchangeably. For example, the IRS investigator states that the Estate's 2012 Gift Tax Return reports that in 2012, "Carole Chaiken made gifts of 'promissory note forgiveness' to trusts in the names of her children," but states elsewhere that it was the Chaiken Family Trust that "'forgave' $8,400,000 of the debt." Smith Decl. ¶ 4. The IRS does not address any distinction between the Estate and the Chaiken Family Trust for tax purposes. In contrast, Donald Chaiken states that the loans at issue "were held by Carole Chaiken and [Donald Chaiken] as trustees of the [Chaiken Family] Trust" and that "[n]one of the loans were made by Carole Chaiken or [Donald Chaiken] individually." Chaiken Decl. II ¶ 10. As discussed below, the fact that the transactions were made by the Chaiken Family Trust rather than Carole Chaiken does not impact the analysis at issue in this petition.

On a related note, as neither the government nor the Estate questions the propriety of reporting transactions made by the Chaiken Family Trust in the gift tax return filed by the Estate of Carole Chaiken, the court will assume that such reporting is appropriate.

2

contends that in order to determine whether it was appropriate for the Estate to treat the transactions as loans for tax purposes, the IRS must ascertain whether Ms. Chaiken had a real expectation that the loans would be repaid. Smith Decl. ¶ 5. This is because the law presumes that transfers between family members are gifts for tax purposes unless the taxpayer can affirmatively show that "there existed at the time of the transfer a real expectation of repayment and an intent to enforce the collection of the indebtedness." *Boneparte v. C.I.R.*, 110 T.C.M. (CCH) 39, 2015 WL 4186197, at *20 (2015). The IRS asserts that Ms. Chaiken suffered from a lengthy illness and died within months of making the purported loans. Smith Decl. ¶ 5. For this reason, the IRS contends that Ms. Chaiken's medical condition at the time the purported loans were made is relevant to determine whether she had a real expectation that the loans would be repaid. *Id.*

To this end, on April 15, 2016, the IRS served the three summonses at issue to Zen Hospice Project, Hospice by the Bay, and Dr. Alan Margolin. Smith Decl. ¶ 9, Exs. 1, 2, 3. Ms. Chaiken received hospice care from Zen Hospice Project and Hospice by the Bay for approximately one week, from June 26, 2013 to July 1, 2013, the date of her death. Chaiken Decl. I ¶ 2. Dr. Margolin is a physician who works with Hospice by the Bay and provided hospice care to Ms. Chaiken. *Id.* ¶ 7. Each of the three summonses requests the following:

> Provide any of [Ms. Chaiken's] medical records that may be in your possession - from January 1, 2010, until the date of her death, on July 1, 2013. This includes records from any hospital, medical specialist, or general practitioner. It also includes any daily logs or records prepared by a healthcare provider, including, but not limited to nurses, and records prepared by or for any medical care facility or any in-home care provider.
>
> Records include any and all papers, documents, memoranda, data, or information of any kind however, denominated electronically stored or in paper or other format, relating to the physical condition of the decedent.

Smith Decl. ¶ 9; Exs. 1, 2, 3.[3]

---

[3] The IRS has received responses from Hospice by the Bay and Zen Hospice Project but states that it will not open the responses until this petition has been resolved. Smith Decl. ¶ 11.

3

In its Amended Petition to Quash IRS Summons to Third Parties, the Estate contends that (1) the three summonses seek medical records that are irrelevant, (2) the IRS failed to follow required administrative steps, and (3) the summonses do not meet the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  The government opposes the petition on the grounds that that the summonses meet all applicable requirements, and asks the court to summarily deny the petition.

## II.   LEGAL STANDARDS

With respect to judicial enforcement of a summons, the IRS need only establish that it has used its summons authority in good faith.  *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 313 (1978) (citations omitted).  To establish its "minimal" burden of good faith, the government must show that (1) there is a legitimate purpose for its investigation; (2) the inquiry may be relevant to the purpose; (3) the information sought is not already within the agency's possession; and (4) the administrative steps required by the Internal Revenue Code have been taken.  *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1344 (9th Cir. 1983) (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  Once the government has put forth a prima facie case that these criteria—known as the *Powell* requirements—have been met, a challenger bears the "heavy burden" of alleging "specific facts and evidence" to support its allegations of bad faith or improper purpose.  *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985) (citations omitted).

## III.   DISCUSSION

### A.   *Powell* Requirements

The Estate does not dispute that the IRS has satisfied the first and third *Powell* requirements—that there is a legitimate purpose for the IRS's investigation and that the information sought is not already in the agency's possession.  The parties disagree about whether the second and fourth requirements of relevance and adherence to administrative procedures have been satisfied.

#### 1.   Relevance

The parties dispute whether the three summonses seek information that is relevant to the IRS's investigation of the Estate's 2012 Gift Tax Return.  According to the government, medical

records from January 1, 2010 to July 1, 2013 may be relevant to its determination of whether Ms. Chaiken had a real expectation of repayment and an intent to enforce the collection of the $8,400,000 in loans that the Chaiken Family Trust made and forgave in 2012. As previously noted, the law presumes that transfers between family members are gifts for tax purposes unless the taxpayer can affirmatively show that "there existed at the time of the transfer a real expectation of repayment and an intent to enforce the collection of the indebtedness." *Boneparte*, 2015 WL 4186197, at * 20 ("[t]ransactions between family members are subject to special scrutiny to determine whether a purported loan was actually a gift."). The government also claims that the medical records are relevant to the IRS investigation because the records may help identify other individuals and entities with relevant information.

The second *Powell* element requires the government to show that the information sought "may be relevant" to the purpose of the investigation. *Samuels, Kramer & Co.*, 712 F.2d at 1344 (citing *Powell*, 379 U.S. at 57-58). The standard for relevance is "whether the inspection sought might have thrown light on the correctness of the taxpayer's return." *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980) (citing *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir. 1969)). The government is not required to establish that the documents sought are "actually relevant in any technical, evidentiary sense." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). "The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility." *Id.* (emphasis in original). "Records that illuminate any aspect of the return . . . are therefore highly relevant to legitimate IRS inquiry." *Id.* at 815.

The government's burden with respect to the second *Powell* factor is minimal, and an IRS agent's sworn declaration is generally sufficient to demonstrate that the inquiry may be relevant. *Samuels, Kramer & Co.*, 712 F.2d at 1345. However, the "[g]overnment's burden, while not great, is also not non-existent." *Goldman*, 637 F.2d at 667. The Ninth Circuit has held that the government must demonstrate "an indication of a realistic expectation rather than an idle hope that something may be discovered." *Id.* at 667 (citing *Harrington*, 388 F.2d at 524).

For example, in *Goldman*, the IRS was investigating a taxpayer's liability for the tax years

1973 through 1976. It issued a summons to the taxpayer's accountant for the taxpayer's records, including records for the years 1970 through 1972. Following the accountant's refusal to comply with the summons, the IRS petitioned for enforcement. The district court denied the petition as to testimony and records for years prior to those for which the IRS was examining the taxpayer's tax liability, holding that the government had failed to establish that the records in question were relevant. The Ninth Circuit affirmed, holding that the district court had not clearly erred. It rejected the government's argument that it had satisfied its burden based on "the mere assertion of relevance" by an IRS agent. 637 F.2d at 667. The court noted that while the agent's assertion of relevance could be sufficient for records concerning the tax years under investigation, "relevance [was] not so clear when records for other years were sought." *Id.* The Ninth Circuit noted that the government had "had every chance to make the minimal showing of specificity required," but that the district court had concluded that its allegations "contained nothing of particularity regarding this case." *Id. Compare United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987), *aff'd in part and vacated in part on other grounds*, 491 U.S. 554, 570 (1989) (affirming district court's determination that IRS had established relevance of three records from years other than tax years under investigation where IRS agent provided "terse" description of each exhibit and statement of relevance to investigation); *La Mura v. United States*, 765 F.2d 974, 982-83 (11th Cir. 1985) (finding clearly erroneous a district court's ruling that records from prior years were irrelevant where the IRS had asserted that they were necessary to investigate changes in the taxpayer's lifestyle between those years and the years under investigation).

Here, the IRS seeks medical records from January 1, 2010 to July 1, 2013 to investigate the 2012 Gift Tax Return. The purported loans were both made and forgiven between July 2012 and December 2012. In order to determine the proper tax treatment of the Estate's transactions in 2012, the IRS contends that it must determine whether, at the time the loans were made, Ms. Chaiken had a real expectation that the loans would be repaid, which would rebut the presumption that the transfers were gifts. The IRS investigator states that although the terms of the credit agreements loans gave the Chaiken children a nearly eighteen-year repayment period, Ms. Chaiken died after a lengthy illness within months of making the purported loans. Smith Decl. ¶

6

5. The investigator asserts that the summonsed documents and testimony are thus relevant because Ms. Chaiken's "medical condition at the time the purported loans at issue were made," as well as her knowledge about her condition, are relevant to the determination of whether she "had a real expectation that the loans would be repaid." *Id*. The IRS investigator further contends that the medical records will identify other individuals and entities that may have additional information. *Id.* at ¶ 9. The IRS investigator offers no rationale for the temporal scope of the summonses.

As the Estate notes, the purported loans were made by the Chaiken Family Trust, and not by Ms. Chaiken in her individual capacity. Chaiken Decl. II ¶ 10. However, the Estate acknowledges that all of the loans at issue were held by Mr. and Mrs. Chaiken as trustees of the Chaiken Family Trust. *Id.* In such a factual context, the court cannot say that Ms. Chaiken's subjective intent regarding the loans is not relevant.

Medical records from 2010 through 2012 may inform the IRS about Ms. Chaiken's medical condition and subjective intent at the time the purported loans were made in the second half of 2012. In other words, if Ms. Chaiken was diagnosed with or treated for a terminal illness before or during 2012, records pertaining to her diagnosis and treatment, as well as her knowledge of her condition, could inform the IRS about her expectation of repayment and intent to enforce the collection of the debts. However, the summonses seek records through July 2013, which includes a period of time following the tax year in question. Although it is theoretically possible that post-2012 medical records may contain information relevant to the 2012 transactions at issue, such relevance is more attenuated.

More problematically, the summonses are broadly worded, and seek *all* medical records, not just those that would tend to show whether Ms. Chaiken knew of the terminal nature of her illness at the time the loans were made, or records that may identify additional sources of information regarding her knowledge or intent. Presumably, this would include all manner of highly private medical information with little or no connection to the relevant questions. To this extent, the government has failed to meet its burden to show that all of the requested records may be relevant to Ms. Chaiken's expectation of repayment in 2012. The court discusses modification

7

of the summonses below.

### 2. Compliance with Administrative Steps

The parties also dispute the fourth *Powell* element, which requires that the IRS follow the administrative steps set forth in the Internal Revenue Code. 26 U.S.C. § 7602(c) of the Internal Revenue Code requires the IRS to notify taxpayers of contact with third parties as follows:

> **(c) Notice of contact of third parties.**--
>
> **(1) General notice.**--An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.
>
> **(2) Notice of specific contacts.**--The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.
>
> **(3) Exceptions.**--This subsection shall not apply--
>
>> **(A)** to any contact which the taxpayer has authorized;
>>
>> **(B)** if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person; or
>>
>> **(C)** with respect to any pending criminal investigation.

26 U.S.C. § 7602(c).

On October 14, 2014, prior to serving the three summonses, the IRS sent the Estate a copy of IRS Notice 609 and IRS Publication 1. IRS Publication 1 contains a section titled, "Potential Third Party Contacts," which states that the IRS will "sometimes talk with other persons" if it needs information that the taxpayer has been unable to provide, or to verify information it has received. *See* Smith Decl., Ex. 4. The Estate claims that under section 7602(c)(1), the IRS was required to provide specific prior notice that it was going to contact Zen Hospice Project, Hospice by the Bay, and Dr. Margolin. In response, the government argues that section 7602(c)(1) only requires the IRS to provide general notice that third party contacts will be made, and not a list of

particular contacts. The government asserts that it provided the Estate with the prior notice required by section 7602(c)(1) by sending IRS Publication 1.

There is no Ninth Circuit decision addressing whether section 7602(c)(1) requires the IRS to provide advance notice of the specific third parties that may be contacted in the course of an investigation, or whether it may simply notify the taxpayer through IRS Publication 1 that the IRS generally may be contacting third parties.

In the absence of Ninth Circuit authority on this question, the court examines the plain language of the statute. *See Yokeno v. Sekiguchi*, 754 F.3d 649, 653 (9th Cir. 2014) ("[s]tatutory interpretation begins with the text of the statute."). If the statutory language is plain, the court must enforce it according to its terms. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). The plain language of section 7602(c) suggests that "advance" notice requires only a general statement that third parties may be contacted. To begin with, Section 7602(c)(1) sets forth the requirements for "general notice," whereas section 7602(c)(2) covers "notice of specific contacts." Section 7602(c)(1) provides that the IRS may not contact a third party "without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made." In contrast, section 7602(c)(2) requires the IRS to "periodically provide to a taxpayer a record of persons *contacted* during such period . . . with respect to the determination or collection of the tax liability of such taxpayer." (emphasis added). The use of the past tense of the verb "contacted" in section 7602(c)(2) suggests that notice of specific contacts must be provided post-contact, not pre-contact. In other words, whereas section 7602(c)(2) requires the IRS to provide periodic notice of each specific contact actually made, section 7602(c)(1) only requires that the IRS provide advance notice that "contacts with persons other than the taxpayer may be made."

The legislative history is consistent with this plain language interpretation of the statute. The Conference Committee revised the Senate Amendment, which simply required the IRS to "notify the taxpayer before contacting third parties." H.R. Conf. Rep. No. 105-599, at 277 (1998). The Conference Committee bifurcated the notice provision, requiring "reasonable notice in advance to the taxpayer that the IRS may contact persons other than the taxpayer," and post-

9

1    contact notification of specific contacts. *Id.* This bifurcation suggests that the legislation intended

2    to differentiate between advance general notice and post-contact notice of specific contacts made

3    with third parties.

4    Two courts in this district that have addressed the issue reached opposite conclusions. In

5    *Baxter v. United States*, No. 15-CV-04764-YGR, 2016 WL 468034, at *2-3 (N.D. Cal. Feb. 8,

6    2016), *amended*, 2016 WL 1359413 (N.D. Cal. Apr. 6, 2016), *appeal docketed*, No. 16-16021 (9th

7    Cir. June 7, 2016), the court interpreted section 7602(c)(1) to require advance notice of particular

8    parties that may be contacted, and held that transmission of IRS Publication 1 is insufficient

9    advance notice. To support its interpretation of the advance notice requirement under section

10   7602(c)(1), the *Baxter* court pointed to language in 26 C.F.R. § 301.7602-2(f)(1)(i)(B), which

11   provides an exception to § 7602(c). *Id.* Under this regulation, if a taxpayer or an authorized

12   representative "requests or approves the contact," the IRS is not required to provide notice in

13   compliance with § 7602(c). 26 C.F.R. § 301.7602-2(f)(1)(i)(B). The court emphasized the use of

14   the phrase "the contact" in the regulation, and interpreted it to contemplate notice for each contact.

15   *Baxter*, 2016 WL 468034 at * 3. The court concluded that the Internal Revenue Code and its

16   implementing regulations "highlight that advance notice should be specific to a particular third

17   party." *Id.*

18   In contrast, in *Mazzarerro v. United States*, No. C-10-80186-MISC-SBA, 2011 WL

19   499972, at *8 (N.D. Cal. Feb. 8, 2011), the court held that an earlier version of IRS Publication 1,

20   which includes an identical section to the one at issue entitled "Potential Party Contacts," was

21   sufficient to satisfy the advance general notice requirement under section 7602(c)(1). While

22   *Mazzarerro* did not provide reasoning for its holding, a number of other district courts, including

23   courts within the Ninth Circuit, have also held that IRS Publication 1 satisfies the general notice

24   requirement under section 7602(c)(1). *See, e.g., Hernandez v. United States*, No. CV-10-MC-

25   9181, 2010 WL 5292339, at *2 (D. Or. Dec. 17, 2010); *Gandrup v. United States*, No. MC 14-

26   123-SLR, 2014 WL 5861719, at *2 (D. Del. Nov. 12, 2014); *Clearwater Consulting Concepts,*

27   *LLLP v. United States*, No. Civil Nos. 2007-33, 2007-34, 2010 WL 2392107, at *5 (D.V.I. Mar.

28   31, 2010); *see also Williams v. United States*, No. 3:12-CV-00496-HU, 2013 WL 594897, at *3

1  (D. Or. Jan. 23, 2013), *report and recommendation adopted as modified in* 2013 WL 594897 (D.
2  Or. Feb. 14, 2013) (stating a letter informing taxpayer that IRS might contact parties is sufficient
3  notice); *see also Highland Capital Mgmt., L.P. v. United States*, 626 F. App'x 324, 327 (2d Cir.
4  2015) (in dicta, rejecting taxpayer's argument that section 7602(c)(1) requires advance notice of
5  each third-party contact).

6  Based upon the plain language of the statute as well as the legislative history, this court
7  agrees with *Mazzarerro* and other cases that section 7602(c)(1) should be interpreted as a general
8  notice requirement, and that furnishing a taxpayer with IRS Publication 1 satisfies the
9  requirements of that statutory provision.  As the IRS provided the Estate with IRS Publication 1
10 before serving the three summonses at issue, the court finds that the government complied with
11 the administrative steps set forth by the Internal Revenue Code.

12 **B.     HIPAA Requirements**

13 Finally, the Estate asserts that the three summonses fail to meet two of the requirements for
14 obtaining protected health information under the Health Insurance Portability and Accountability
15 Act of 1996 ("HIPAA") Pub.L. No. 104-191, 110 Stat. 1936 (1996) (codified at various sections
16 of Titles 18, 26, and 42 of the United States Code).  The government does not dispute that the
17 summonses are subject to HIPAA, but asserts that the summonses meet all HIPAA requirements.

18 Pursuant to regulations promulgated under HIPAA, IRS summonses may be used to collect
19 protected health information provided that: (1) the information sought is relevant and material to a
20 legitimate law enforcement inquiry; (2) the request is specific and limited in scope to the extent
21 reasonably practicable in light of the purpose for which the information is sought; and (3) de-
22 identified information could not reasonably be used.  45 C.F.R. § 164.512(f)(1)(ii)(C).

23 The first requirement, that the information sought must be "relevant and material," is a
24 higher standard than *Powell*, which only requires a showing that the information "may be
25 relevant."  45 C.F.R. § 164.512(f)(1)(ii)(C)(1); *Samuels, Kramer & Co.*, 712 F.2d at 1344.  As
26 discussed above, the government has failed to show that all of the broadly requested medical
27 information "may be relevant" under *Powell*.  For the same reasons, the information sought by the
28 summonses does not meet HIPAA's "relevant and material" standard.

11

1      A request for health information must also be "specific and limited in scope." 45 C.F.R. §

2   164.512(f)(1)(ii)(C)(2).  As discussed above, the summonses seek *all* medical records from

3   January 1, 2010 to July 1, 2013.  They are not tailored to seek only those records that may show

4   what Ms. Chaiken knew about her illness when the loans were made in 2012, or those records that

5   may identify additional sources of relevant information.  The court finds that both the breadth and

6   temporal scope of the summonses are not specific and limited, in violation of HIPAA.

7      **C.    Modification of the Summonses**

8      As discussed, the government has failed to show how the broad request for all of Ms.

9   Chaiken's medical records from January 1, 2010 to July 1, 2013 may be relevant to the

10  investigation of the tax year 2012, and has also failed to demonstrate that the summonses comply

11  with HIPAA requirements.  At the hearing, in response to questions about the court's power to

12  narrow the scope of the summonses, the government took the position that the court is limited to

13  enforcing or quashing the summonses as written, and may not narrow or modify the summonses in

14  any way.  The government cited *United States v. Jose*, 131 F.3d 1325, 1329 (9th Cir. 1997) (en

15  banc), in which the Ninth Circuit held that a "district court is strictly limited to enforcing or

16  denying IRS summonses." 131 F.3d at 1329.  After the hearing, the government submitted a

17  supplemental brief taking the opposite position, arguing that *Jose*'s holding applies only to

18  "conditional enforcement" of an IRS summons, while "partial enforcement," by which the court

19  modifies the scope of a summons, is permissible.  Gov't's Suppl. Brief at 2.  In its responsive

20  brief, the Estate argues that regardless of the court's authority to modify the summonses, it should

21  quash the summonses and require the IRS to issue new, more narrowly tailored summonses.

22  Estate's Suppl. Brief at 2.

23     In *Jose*, the IRS moved for enforcement of two summonses.  The district court granted the

24  motion on the condition that the IRS give notice to the respondent before providing the summoned

25  documents to any other division of the IRS, including the Criminal Investigation Division.  131

26  F.3d at 1327.  The IRS appealed, and the Ninth Circuit examined the following question: "[m]ay

27  the district court conditionally enforce IRS summonses, or is it limited to enforcing or denying

28  summonses?" *Id*. at 1328.  The court held that since "'[t]he sole purpose of the enforcement

12

proceeding is to ensure that the IRS has issued the summons for proper purpose and in good faith,' . . . the district court is strictly limited to enforcing or denying IRS summonses." *Id.* at 1329 (quoting *United States v. Barrett*, 837 F.2d 1341, 1349 (5th Cir. 1988)).

The Ninth Circuit subsequently clarified *Jose* in an unpublished opinion by stating that "*Jose* holds that a district court may not conditionally enforce a summons by restricting the IRS's use of the summoned material." *United States v. Cathcart*, 409 Fed. Appx. 74, 76 (9th Cir. 2010); *see also United States v. Monumental Life Insurance Co.*, 440 F.3d 729, 737 (6th Cir. 2006) (noting that conditional enforcement imposes restrictions on the IRS's use of summoned materials, while partial enforcement "narrows the *scope* of the summons by limiting the type and amount of documents that the summoned party must produce."). In this case, narrowing the scope of the documents sought by the summonses would not impose restrictions on the IRS's use of the summoned material. Thus, the court concludes that such "partial enforcement" of the summonses is not impermissible under *Jose*. *See United States v. Bisceglia*, 420 U.S. 141, 147 (1975) ("[t]he cases show that the federal courts have taken seriously their obligation to [scrutinize IRS summonses] to fit particular situations, either by refusing enforcement or narrowing the scope of the summons. . . . [i]ndeed, the District Judge in this case viewed the demands of the summons as too broad and carefully narrowed them." (citations omitted)). The government has shown that certain medical records from January 1, 2010 to December 31, 2012 may be relevant to the IRS's investigation of the 2012 Gift Tax Return, since they may bear on Ms. Chaiken's expectation of repayment and intent to enforce the collection of the debt, and may identify other sources of relevant information. Therefore, the court proposes to narrow the three summonses as follows: Zen Hospice Project, Hospice by the Bay, and Dr. Alan Margolin shall provide to the IRS

> any of Ms. Chaiken's medical records that may be in your possession dated January 1, 2010 to December 31, 2012 that reflect Ms. Chaiken's medical condition and knowledge thereof, and/or identify other individuals and entities that may have information about Ms. Chaiken's medical condition and knowledge thereof during the same time period.

The information sought by the summonses as narrowed above is "specific and limited in scope," and also satisfies HIPAA's "relevant and material" standard.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that the Estate's amended petition to quash be granted in part and denied in part, and that the government's motion for summary denial be granted in part and denied in part.

The Clerk is directed to reassign this case to the Honorable Phyllis J. Hamilton, the District Judge on duty on the date the petition was filed. Any party may file objections to this report and recommendation with Judge Hamilton within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: December 27, 2016



Donna M. Ryu
United States Magistrate Judge

14